# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 478 | **DATE** | 8/10/2001 |
| **CASE TITLE** | Celsion Corp. vs. Sterns Management Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendants' motion to dismiss the complaint. Accordingly, this action is dismissed. Any pending motion in this case is terminated as moot. All schedules set in this case are also vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 4 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | AUG 1 3 2001 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | CN docketing deputy initials | 30 |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 8/10/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 10 PM 3:52 | MPJ mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CELSION CORP, a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>STEARNS MANAGEMENT CORP., an Illinois Corporation, **WARREN C. STEARNS, WARREN R. STEARNS, CHARLES A. STEARNS, ANTHONY RIKER, LTD.**, an Illinois Corporation, **JOHN T. HORTON**, Individually and as Trustee of the George T. Horton Trust, and the **GEORGE T. HORTON TRUST**,<br><br>Defendants. | No. 01 C 478 |

## MEMORANDUM OPINION AND ORDER

Celsion Corporation ("Celsion"), brought this action under Section 29(b) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78cc(b), and the Declaratory Judgment Act, 28 U.S.C. § 2201, for rescission of a series of common stock purchase warrants that Celsion issued to the defendants, Stearns Management Corporation ("SMC"), Warren C. Stearns ("Stearns"), Warren R. Stearns, Charles A. Stearns, Anthony Riker, Ltd., John T. Horton, and the George T. Horton Trust. Celsion claims that Stearns and SMC solicited potential investors to purchase Celsion's securities without the assistance of any broker-dealer registered with the Securities Exchange Commission ("SEC"), as required by § 15(a)(1) of the Act, 15 U.S.C. 78o(a)(1). Original jurisdiction over this

matter exists pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. The defendants move to dismiss the action, and I grant their motion.

I.

Celsion researches and develops patented treatments of cancer and other diseases. Warren C. Stearns is the president, director, and majority shareholder of SMC, which provides consulting and financial advisory services to Celsion. Warren R. Stearns, Charles A. Stearns, Anthony Riker Ltd., John T. Horton, and the George T. Horton Trust are all holders of Celsion common stock purchase warrants, which entitle them to Celsion stock at a purchase price of sixteen cents per share.

In 1996, Celsion sought to raise capital for its business operations, and Stearns proposed a plan to raise capital, including bridge financing, followed by a private placement offering and a secondary offering of Celsion equity securities. Celsion alleges that, at a May 1996 meeting, Stearns repeatedly represented to Celsion's officer that he and SMC regularly raised funds through the sales of his clients' securities, and that he would raise funds for Celsion through the private placement of equity securities. Celsion entered into a consulting agreement with SMC on May 28, 1996, in which SMC agreed to provide recommendations concerning offerings of securities in private transactions and public transactions. In return, Celsion agreed to pay SMC's fees and

2

issue common stock purchase warrants to SMC's designated assignees. The warrants included anti-dilution provisions, and granted the holders the right to demand that, when they exercised the warrants, the underlying shares of Celsion stock that they purchased would be registered with the SEC and could be publicly traded.

In August 1996, Celsion issued common stock purchase warrants to Warren R. and Charles A. Stearns, Anthony Riker, Ltd., John T. Horton, and the George T. Horton Trust. In August 1997, under the terms of the May 1996 agreement, Celsion issued new warrants substituting the original warrants. In March 1999, SMC demanded that Celsion register with the SEC all the underlying shares that the warrant holders would receive upon exercise of their warrants. This included a total of 3,460,587 shares at a purchase price of sixteen cents per share. Celsion refused to register the shares with the SEC. The present value of the common stock purchase warrants held by the defendants exceeds $15 million. Celsion seeks rescission of the common stock purchase warrants that Celsion issued to defendants. Defendants move to dismiss on statute of limitations grounds, among others.

II.

I grant a motion to dismiss for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining this,

I accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 626-27 (7th Cir. 1995).

Defendants argue that Celsion's action for rescission of the common stock purchase warrants is time-barred by the statute of limitations provided in section 29(b) of the Act. Celsion argues that a federal limitations period does not apply, and even if it did, this action was brought within the requisite time period. Therefore, I must determine whether a federal or state statute of limitations applies to claims brought under section 29(b), and whether the statute of limitations has expired here.

Section 15(a)(1) of the Act prohibits any broker from using interstate commerce to effect a transaction in securities or to induce or attempt to induce the purchase or sale of any security unless the broker is registered with the SEC. 15 U.S.C. § 78o(a)(1). Section 29(b) permits a party to a contract to seek its rescission if performance of the contract "involves the violation of or the continuance of any relationship or practice in violation of" any provision of the Act. 15 U.S.C. § 78cc(b). The Supreme Court has found an implied, private cause of action for rescission of a contract under section 29(b), 15 U.S.C. § 78cc(b). *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 388 (1970); *see also Regional*

*Props., Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552, 558 (5th Cir. 1982).

Defendants argue that the action is time barred by the limitations provision of section 29(b)(2)(B), which states that:

> no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) or (2) of subsection (c) of section 78o of this title, unless such action is brought *within one year after the discovery that such sale or purchase involves such violation and within three years after such violation.*

15 U.S.C. §78cc(b)(2)(B) (emphasis added). This provision provides an express limitation for the rescission of a transaction for violation of the antifraud provisions in section 15(c), but not for the broker-dealer registration requirements of section 15(a). Therefore, I must determine the applicable statute of limitations for rescission of a contract for a violation of section 15(a).

Generally, when Congress has failed to provide a statute of limitations for a federal cause of action, I "borrow" or "absorb" the local state law time limitation most analogous to the case at hand. *Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991). However, I look to federal law "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking."

5

*Id.* at 356. In *Lampf*, the Supreme Court was faced with the question of which statute of limitations to apply to a private suit brought pursuant to section 10(b) of the Act. *Id.* at 361. The Court held that the uniform federal period (one-and-three-year limitations period) in the Act's original remedial provisions applied. *Id.*[1] The Court stated that "where the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period." *Id.* at 359. There is no clearer indication of how Congress would have balanced the policy considerations implicit in any limitations provision than the balance struck by the same Congress in limiting similar and related provisions. *Id.*

Celsion argues that there is no analogous provision in the federal securities laws, and urges the adoption of a state limitations period. However, I need not consider state-law alternatives where Congress has provided an express limitations period for correlative remedies within the same enactment. *Id.* at 360. The 1934 Act contains a number of express causes of action, each with an explicit limitations period, and, with only one exception, each of these includes some variation of a one-year period after discovery combined with a three-year period of repose.

---

[1] Like section 15(a), the text of section 10(b) does not expressly provide for private claims, but a private right of action has been implied by the courts. *Lampf*, 501 U.S. at 358.

6

*Id.* In adopting the 1934 Act, Congress amended the limitations provision of the 1933 Act, adopting the one-and-three-year structure for each cause of action contained therein. *Id.* The inclusion of the one-and-three-year structure in the broad range of express securities actions contained in the 1933 and 1934 Acts suggests that a one-and-three-year period would not frustrate the policies underlying the Acts for similar implied actions. *Id.* at 361.

Celsion argues that the uniform federal period should not be applied because, unlike other antifraud provisions in the 1934 Act, such as section 10(b), section 15(a) imposes strict liability for failure to register with the SEC. *See SEC v. Randy*, 38 F. Supp. 2d 657, 667 (N.D. Ill. 1999) (scienter is not an element of a violation of Section 15(a)). The *Lampf* court did not rely on the scienter requirement in determining that the uniform federal period applied, but instead focused on the common purpose of § 10(b) and other sections of the 1934 Act. 501 U.S. at 360. Section 15(a) was enacted as an original part of the 1934 Act.[2] Although the elements of a violation of section 15(a) differ from other sections of the 1934 Act, the congressional purpose behind the regulations is the same. The 1934 Act was intended to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter

---

[2] June 6, 1934, c. 404, Title I, §15, 48 Stat. 895.

7

markets, and to impose regular reporting requirements on companies whose stock is listed on national securities exchanges. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976) (citing S. Rep. No. 792, 73d Cong., 2d Sess., 1-5 (1934)). The requirement that brokers and dealers register is of the utmost importance in effecting the purposes of the Act. *Regional Props.*, 678 F.2d at 562. The registration requirement enables the SEC (and private citizens, through the implied right of action) to exercise discipline over those who may engage in the securities business and it establishes necessary standards with respect to training, experience, and records. *Id.* The federal uniform period found in the 1934 Act applies to Celsion's action under section 15(a).³ Celsion had one year after the discovery of the facts constituting the violation but no more than three years after such violation to bring its claim under section 15(a). *Lampf*, 501 U.S. at 364. Celsion filed this claim on April 27, 2000. Therefore, the facts giving rise to the violation must been discovered by April 27, 1999, or have occurred no earlier than April 27, 1997.

The statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in its

---

³ The New York appellate court addressed a similar issue and held that a defense of illegality, based on plaintiff's failure to register as a broker-dealer in violation of section 15(a), was properly rejected on the ground that it was not raised within three years after the violation or one year after its discovery. *Carter Fin. Corp. v. Atlantic Med. Mgmt., LLC*, 262 A.D.2d 178, 178 (N.Y. App. Div. 1999).

8

complaint. *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993). However, if it pleads facts that show that its suit is time-barred or otherwise without merit, it has pleaded itself out of court. *Id.* Here, based solely on the allegations in the complaint, Celsion has pleaded facts that show Celsion and SMC entered into a consulting agreement on May 28, 1996. However, Celsion alleges that Stearns and SMC solicited potential investors to purchase Celsion's securities without the assistance of any registered broker-dealer from April 1996, before the contract was entered into, through July 1998, when Celsion terminated the contract. Therefore, Celsion argues, the statute of limitations period would only begin to run in July 1998, because the violation was a continuing violation which ceased only with the termination of the contract.

The Seventh Circuit has not addressed the viability of a "continuing violation" theory for securities actions, but one district court has held that it may apply in some cases. *See Securities & Exch. Comm'n v. Ogle*, No. 99 C 609, 2000 WL 45260, at *4-5 (N.D. Ill. Jan. 11, 2000) (Conlon, J.). In *Ogle*, the defendant was accused of market manipulation, and the court held that acts occurring before the limitations period were actionable because (1) the SEC was unable to detect discrete violations until the alleged "scheme" was well underway, and (2) the alleged market manipulation was ongoing and not a discrete goal. *Id.* The instant

case is distinguishable on both grounds. Unlike market manipulation or a scheme of securities fraud, there is nothing about soliciting investors without the assistance of a registered broker that is covert or difficult to detect; either the broker is registered or not. Nor has Celsion alleged that SMC was engaged in a unified, indivisible scheme. Specifically, Celsion is not seeking to rescind the entire contract with SMC, or even all of the warrants issued under it, but only the particular warrants it issued to defendants Warren R. Stearns, Charles A. Stearns, Anthony Riker, Ltd., John T. Horton, and the George T. Horton Trust. According to the complaint, Celsion issued these warrants in August 1996. Therefore, while the consulting contract may still have been in effect and SMC may have been continuing to violate § 15(a)(1), all of the violations for which Celsion seeks rescission in this lawsuit occurred before the end of August 1996, outside the three year period of repose. Moreover, even if a continuing violation theory applied, Celsion alleges in its complaint that "[a]t the time Stearns was soliciting investors, Celsion was aware that he was not a registered broker-dealer." Celsion says that it didn't know that Stearns and SMC were required to be registered, but it is "the discovery of the *facts constituting the violation*" that starts the one-year period of limitations, Lampf, 501 U.S. at 364 (emphasis added), not the discovery that there was a violation.

Celsion also argues that the limitations period for this cause of action should not begin to run until the warrants have been executed. According to Celsion, the warrants have not been executed yet,[4] so the cause of action has not and will never accrue until the defendants execute the warrants and force Celsion to register the stock with the SEC. This theory is not tenable. A cause of action under the Act accrues and the statute of limitations begins to run "on the date the sale of the instrument is complete." *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1460 (7th Cir. 1992) (holding in a § 10(b) case arising before *Lampf* that, even when borrowing a state statute, accrual is a question of federal law). A sale occurs when the parties to a transaction have obligated themselves to carry it out, with nothing further remaining to be done but the performance of functions such as paying the purchase price and transferring title to, or possession of, the securities. *Adams v. Cavanagh Communities Corp.*, 847 F. Supp. 1390, 1404 (N.D. Ill. 1994). A contract for the issuance or transfer of a security may qualify as a sale under the securities laws even if the contract is never fully performed. *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 559 (2nd Cir.

---

[4] This allegation appears in Celsion's brief and not in the complaint, but the Seventh Circuit has held that I may consider additional facts in the plaintiff's brief so long as they are consistent with the allegations in the complaint. *See Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999); *see also Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

11

1985). At the latest, the sale of securities was complete when Celsion issued the warrants to the defendants in August 1996; at that point, the only function remaining to be carried out was Celsion's registration of the warrants with the SEC. Therefore, the sale was complete in August 1996, outside the three year period of repose. *See Adams*, 847 F. Supp at 1404.

Finally, Celsion alleges that identical new warrants were substituted for the original warrants in August 1997, within the three year period of repose. Even if this constituted a new sale, rather than an obligation under the original sale, something I do not decide here, I have already held that Celsion's knowledge at the time of the transactions that Stearns was unregistered bars the action under the one-year limitation period. Because Celsion's action is barred by the uniform federal one-and-three-year period of limitation and repose, I need not address defendants' other arguments. Defendants motion to dismiss is GRANTED.

**ENTER ORDER:**

*Elaine E. Bucklo*
United States District Judge

Dated: August 10, 2001